## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| AFSHEEN KHAN, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| | § | |
| v. | § | Civil Action No. 3:25-cv-1169 |
| | § | |
| | § | |
| CITY OF RICHARDSON and | § | |
| DALLAS COUNTY; | § | |
| | § | |
| *Defendants.* | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

### PRELIMINARY STATEMENT

Plaintiff Afsheen Khan ("Ms. Khan") files this civil action seeking redress for violations of her constitutional and statutory rights. Ms. Khan's right to free exercise of her religion—found in the United States and Texas constitutions, as well as federal and state statutes—was violated when she was forced to remove her religiously mandated hair and body covering ("hijab") during periods of custodial detention and for booking photographs.

City of Richardson detention officers forced Ms. Khan, an observant Muslim woman, to go for hours without her hijab while in custody in April 2024. Although Ms. Khan protested many times based on her sincere religious practice, Richardson detention officers stripped her of her hijab the entire time she remained in their custody. Furthermore, she was forced to take her booking photograph without her hijab, creating a perpetual violation of her religious beliefs by Richardson Police Department. This photograph can be viewed by anyone, man or woman, who has access to the database which houses booking photographs.

1

Dallas County Sheriff's Department ("DCSD") also violated Ms. Khan's religious beliefs by refusing to return her hijab during transport and initial booking, though Ms. Khan repeatedly requested it. Eventually, due to Ms. Khan's dogged tenacity and insistence, DCSD officers returned her hijab after she was without it for about four hours in Dallas County custody. Nonetheless, Ms. Khan was forced to uncover her ears and a portion of her hairline for her booking photo, in spite of her insistence that those parts remain covered.

In a separate incident in March of 2024, DCSD officers refused to allow Ms. Khan to cover her hair for her booking photograph. These booking photographs continue to be accessible to all individuals, male or female, with access to law enforcement databases. The March 2024 photo also appears online through a third-party website which collects and publishes booking photographs. Ms. Khan has suffered, and continues to suffer, emotional distress as a result of these violations.

## JURISDICTION AND VENUE

1.      This Court has original jurisdiction over claims set forth herein under 28 U.S.C. § 1331 as the conduct alleged and corresponding remedies fall under 42 U.S.C. § 1983 and other federal statutes. The Court also has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

2.      Venue is proper in the Northern District of Texas because all acts and/or omissions alleged herein occurred in this District. 28 U.S.C. § 1391(b)(2). Defendants also reside in the Northern District of Texas. 28 U.S.C. § 1391(b)(1).

## PARTIES

3.      Plaintiff Afsheen Khan is a twenty-three-year-old Muslim woman who now resides in Leander, Texas.

4.      Defendant City of Richardson ("Richardson") is a political subdivision of the state

of Texas. The City of Richardson includes the Richardson Police Department.

5.    Defendant City of Richardson can be served with process by serving the City Secretary's Office at 2360 Campbell Creek Blvd., Suite 525 Richardson, TX 75082.

6.    Defendant Dallas County is a political subdivision of the state of Texas. The County of Dallas includes the Dallas County Sheriff's Department, which runs the Dallas County Jail.

7.    Defendant Dallas County can be served with process by serving County Judge Clay Jenkins at 500 Elm Street, Suite 7000, Dallas, TX 75202.

8.    Plaintiff alleges that Defendants were responsible for the events and happenings set forth herein, proximately caused injury and damages to Plaintiff, and are jointly and severally responsible for Plaintiff's damages.

9.    The City or Richardson Police Department and detention officers acted within the scope of their authority for the City of Richardson.

10.    The Dallas County Sheriff's Department and detention officers acted within their scope of authority for the County of Dallas.

11.    Each Defendant is a governmental entity which engaged in and ratified the tortious and unlawful actions by individual employees of the City of Richardson and Dallas County, as described herein.

### JURY DEMAND

12.    Plaintiff demands a trial by jury.

## STATEMENT OF FACTS[1]

13.    Ms. Afsheen Khan observes the religious practice of wearing a hijab pursuant to her Muslim faith. The term "hijab" used throughout this complaint refers to the belief and practice of covering the hair, neck, ears, and body in front of all men, who are not related to the individual through either consanguinity or marriage, as part of a sincerely held religious belief.

14.    The practice of wearing a hijab is observed by Muslim women globally and traditionally denotes a headscarf or covering.

15.    Further, Ms. Khan sincerely believes it is only permissible for a man, to whom she is related either biologically or through marriage, to physically touch her. This belief is an extension of her commitment to her faith that commands modesty and falls under the general theological framework of hijab practice.

16.    Ms. Khan wears her hijab daily in observance of her sincerely held belief that her religion requires her to do so. For Ms. Khan, the practice of wearing a hijab reflects a deeply personal relationship with God. Ms. Khan wore her hijab at all times relevant to the facts of this Complaint.

17.    Ms. Khan's hijab is typically secured by safety pins and/or magnets to hold it in place and cover her neck, chest, hair, and ears. To ensure her hair is completely covered, she wears a cap underneath her hijab. She also wears long sleeves to cover her arms.

---

[1] Plaintiff provides in the section below the general substance of her factual allegations. Plaintiff does not intend that these sections provide comprehensively, in detail, or even in chronological order, any or all allegations. Instead, Plaintiff presents these sections to provide Defendants sufficient and fair notice as to the general nature and substance of Plaintiff's allegations, and to further demonstrate that Plaintiff's claims have facial plausibility. To the extent that Plaintiff quotes a conversation, she has done so to the best of her recollection and knowledge. Although Plaintiff attempts to sufficiently identify parties, many of their names are currently unknown. Plaintiff pleads specific facts which give rise to the legal claims and redress delineated herein. Plaintiff is not pleading her "best case," as she is incapable of doing so until afforded an opportunity to conduct discovery. Plaintiff seeks leave to amend this pleading as further facts are developed, or if the Court determines Plaintiff's pleading is in any manner deficient.

18.     Wearing hijab is one of the most visible signs of the Muslim faith, and women who wear it are often subjected to hateful words or actions, or other fear and pressure to remove it. Being forced to remove one's hijab in public is a profound defilement of a hijab-observant woman's sincerely held religious beliefs and a violation of her religious practice. It is akin to demanding that a secular person strip naked in front of strangers.

19.     Ms. Khan also prays five times daily, during the designated time intervals for the Muslim prayer. This requires that she face the direction of Mecca and perform a series of physical postures including standing, bowing, and prostrating while reciting specific verses from the Qur'an.

**Events at Richardson Police Department**

20.     In either the late evening or early morning of April 25–26, 2024, Richardson police officers approached Ms. Khan and her friend while they were sitting and talking in Ms. Khan's car at a park after hours.

21.     When officers ran her name, they learned Ms. Khan had an outstanding warrant.

22.     Officers arrested and transported her to the Richardson Police Department, which contains a small jail facility.

23.     During the intake process, a female officer instructed Ms. Khan to remove her hijab. Ms. Khan explained she wore hijab as part of her sincerely held religious beliefs and was religiously mandated to continue wearing it throughout the period of detention. She asked the female officer if she could search underneath her hijab in a private area, outside the presence of men.

24.     The female officer refused any such accommodation and one of the male officers reiterated the female officer's instructions that Ms. Khan would be required to remove her hijab in

accordance with the City of Richardson's policy.

25.    Another male officer also informed Ms. Khan that her hijab would have to be removed.

26.    Ms. Khan was then escorted by a female officer to the bathroom to change her clothes. At this time, the female officer repeated that Ms. Khan would be required to remove her hijab, per policy, due to safety and security issues.

27.    Ms. Khan requested that the officer call a supervisor and re-asserted her constitutional right to wear the hijab.

28.    Ms. Khan observed the female officer placing the call and listened as the female officer explained Ms. Khan's request and religious restrictions. The female officer was instructed by the person on the phone not to return Ms. Khan's hijab to her but to instead provide her a blanket as an alternative.

29.    Ms. Khan reiterated her objection, stating that a blanket would not be a sufficient accommodation or alternative for her hijab. The female officer told her that this was the policy in place, that everyone had to do it, and the blanket was the best accommodation they could offer.

30.    Believing she had no other viable option, Ms. Khan removed her hijab and changed into the City of Richardson's inmate uniform.

31.    The female officer then instructed Ms. Khan to walk from the bathroom to the detention room. She did so without either her hijab or the blanket which was supposed to be provided as a substitute.

32.    She remained effectively uncovered for nearly an hour in a public place with multiple men present in violation of her sincerely held religious beliefs before she was provided with the blanket.

33.     Once in the detention room, the officers, both female and male, asked Ms. Khan intake questions. During the intake, Ms. Khan attempted to utilize the blanket to cover herself again, but the blanket kept slipping to expose portions of her hair, neck, and arms.

34.     Part of the booking process required Ms. Khan to have her photograph and fingerprints taken. At this time, officers instructed Ms. Khan to remove the blanket for the photograph. Ms. Khan objected, and officers once again told her that the booking photograph had to be taken and that there was nothing they could do.

35.     Ms. Khan requested that a female officer take her booking photograph and fingerprint her so that no men would be present while her hair was completely uncovered and also to minimize unnecessary physical contact prohibited by Ms. Khan's religious beliefs.

36.     Ms. Khan was then moved to another room for the photo to be taken. Two officers were present: the female officer, who patted her down upon arrival, and a male officer. She was ordered to remove the blanket, and she objected, once again citing her religious beliefs and requesting a female take her photo without men in the room. Despite the presence of a female officer to perform the task, the male officer refused to leave the room. The officers instead instructed Ms. Khan to remove the blanket from her head.

37.     The female officer took Ms. Khan's photographs with her hair, neck, and ears exposed with the male officer in the room, despite Ms. Khan's repeated and vociferous religion-based objections. The egregious and diminutive behavior continued with the female officer commenting that the photo was nice, and the male officer chiming in that Ms. Khan "looked pretty."

38.    On information and belief,[2] the photo where Ms. Khan appears without her hijab continues to be accessible to Richardson Police Officers, male and female alike, and to others in law enforcement databases. Ms. Khan continues to experience ongoing harm and distress because these photographs continue to be accessible without regard to Ms. Khan's religious requirements to keep her hair, ears, neck, and chest covered.

39.    The officers then proceeded to fingerprint Ms. Khan. The fingerprinting process necessitates physical contact between the person being fingerprinted and the person facilitating it. Ms. Khan objected to the male officer conducting the task and asked it be done by the female officer who was present. Despite this, with blatant disregard to Ms. Khan's accommodation request, the male officer fingerprinted her, under the justification that he had already taken her booking photograph, even though there was a female officer physically present.

40.    Ms. Khan was taken back to a holding cell for a few hours, where she put the blanket back on to cover herself and attempted to pray but was unable to do so properly due to the cell's cold temperature and the difficulty keeping the blanket on while praying. In order to pray properly, Ms. Khan needed to be able to keep herself covered, which is usually accomplished by the hijab. In its absence, the blanket was wholly inadequate, preventing her from covering herself so that she could pray properly.

41.    She was then informed she would be transported to Dallas County's Lew Sterrett Justice Center ("Lew Sterrett") and was instructed to remove the blanket and change into the clothes she was wearing when she arrived at the jail.

_____

[2] When Plaintiff pleads factual allegations "upon information and belief," Plaintiff is pleading that the specified factual contentions either have or will likely have evidentiary support after a reasonable opportunity to conduct further investigation and/or discovery.

42.     In the bathroom, Ms. Khan was given a bag containing her clothing, but her hijab was missing. She requested her hijab be returned to her twice, but officers refused, stating that her hijab was in her property bag, which she was not permitted to access while she remained in custody.

43.     Exhausted and distressed, Ms. Khan referred to the pending lawsuit against Dallas County for forcing Muslim women to remove their hijabs.[3] In response, one officer told her she was welcome to take the issue up with Dallas, but they would not allow her to leave the facility with the blanket, nor would they provide her with her hijab.

44.     When Ms. Khan returned from the bathroom to the cell without her hijab, a male Muslim officer entered to speak with her. He explained that because he was also Muslim, he believed what was happening was wrong and understood the difficulty of what she was going through, but that it was part of their required procedure. He also told her that DCSD would return her hijab to her once she was transferred to their custody.

45.     On information and belief, the City of Richardson, at the time of this incident, had a policy requiring inmates to remove all head coverings upon booking in and taking booking photographs, with no accommodations for sincerely held religious beliefs.

**Transportation from Richardson Police Department to Dallas County Jail**

46.     DCSD officers arrived at the City of Richardson jail to transport Ms. Khan to Lew Sterrett.

47.     Ms. Khan asked the male DCSD transporting officer (who, on information and belief, was Officer Reyes) to return her hijab so she could cover her hair before being transported.

---

[3] *See El-Hussain v. Dallas Cnty.*, No. 3:24-CV-0737-B (N.D. Tex. 2024).

He refused her request.

48.    Without either the hijab she was wearing upon arrival at the City of Richardson jail or any other alternative garment, Ms. Khan was required to walk through common areas, where men were present, to the DCSD transport vehicle. Furthermore, Ms. Khan was transported in a DCSD vehicle accompanied by male officers. Upon information and belief, the vehicle had an activated internal video recording device, with a male officer driving the vehicle.

### Events at Lew Sterrett

49.    As soon as she arrived at Lew Sterrett, Ms. Khan again asked Officer Reyes for her hijab. He told her to wait until they got inside the building, after she was booked in.

50.    Another man, Officer Nguyen, patted her down upon arrival. Officers still had not returned Ms. Khan's hijab.

51.    A female officer (who, on information and belief, was Officer Winchester) conducted Ms. Khan's booking intake process. Once completed, Ms. Khan repeated her request to have her hijab returned. Officer Winchester refused, stating that the hijab was part of her property, which Ms. Khan wouldn't have access to until she was either released or in housing. Ms. Khan again asserted her religious beliefs and rights to exercise her religion and pointed to the ongoing lawsuit against Dallas County for removing hijabs from Muslim women. Officer Winchester noted that Ms. Khan did not arrive with a hijab. Ms. Khan explained that it had been taken from her earlier, despite her objections, and had not been returned.

52.    Ms. Khan said that she wanted to speak to the chief in charge of the jail. Officer Winchester replied that the chief didn't come in until later. Ms. Khan asked for the chief's name, but Officer Winchester refused to give it to her.

53.    After being fingerprinted, Ms. Khan asked a different female officer for her hijab.

The officer told her that she would receive it after she completed her strip search. Ms. Khan underwent the strip search, and finally received her hijab after approximately four hours in Dallas custody without it.

54.     Ms. Khan then waited and was taken through various booking processes, including medical intake, for a few hours.

55.     In the afternoon, she was taken to a common area where her arraignment was to be conducted. Other women were seated in the chairs in the area.

56.     Ms. Khan asked a female officer (who, upon information and belief, was Officer Luqman) if she could kneel and pray one of the five daily prayers, as required by her religious beliefs. Officer Luqman said she would ask her sergeant and return with an answer. When Officer Luqman came back, she told Ms. Khan that she was not allowed to pray because it was a public setting where others were present. She also said that Ms. Khan was not allowed to put her head on the floor or perform the standard motions for prayer, even while seated—effectively preventing Ms. Khan to engage in the required physical movements for the Muslim prayer, like prostration. The result was that Ms. Khan was not allowed to pray at all until she was moved to another cell, preventing her from exercising her deeply held religious beliefs.

57.     As part of the booking process, a female officer also took her photograph. The female officer ordered Ms. Khan had to remove her hijab for the photograph.

58.     On information and belief, Dallas County had a policy regarding the removal of head coverings for booking procedures.

59.     Ms. Khan objected, stating her religious beliefs required her to keep her hair, neck, and ears covered. The female officer continued to insist on the removal until Ms. Khan referenced the pending lawsuits against Dallas for removing hijabs from women in custody.

60.    The officer said, "I don't care, I'm going to check your photo anyway," referring to her previous booking photograph.

61.    The officer checked records and remarked that "in [Ms. Khan's] other photo [she] didn't have it on," before commanding that she "take it off." Ms. Khan said that, at that time, she had requested to cover her head, but was not permitted to do so.

62.    Despite Ms. Khan's protests, the officer insisted that she pull back her hijab to show her ears. However, Ms. Khan believes that her ears must also be covered as part of her faith and practice in wearing the hijab. In exposing her ears, Ms. Khan also believes that she may have exposed some of her hair in the photo as well.

63.    On information and belief, the mugshot was placed in law enforcement databases, which are publicly accessible to any men who wish to view them. Ms. Khan continues to experience ongoing harm and distress because men can continue to access and view those photographs.

64.    She was released at some point between the night of April 26 and the early hours of April 27, 2024.

**Ms. Khan's Previous Interaction with Dallas County**

65.    In early March 2024, Ms. Khan was arrested in Dallas County following a protest. After being taken to Lew Sterrett, she was booked in.

66.    Upon arrival, she requested that a woman, not a man, pat her down, as her faith requires. Her requests were denied, and a male DCSD officer patted her down. Ms. Khan believes that the officer that conducted the pat-down here was the same officer who patted her down during her April 2024 intake.

67.    When the time came for her booking photograph to be taken, she requested to keep

her hood on over her hair, which she had been using as a head covering because the scarf that she had during her arrest had not been returned to her. The DCSD detention officer said that she could not keep her hair covered and took her picture without her hair covered.

68.    A third-party website that reposts booking photos after arrest was able to access the photo from Dallas County, and it remains visible on their website.

69.    On information and belief, the same photo appears within law enforcement databases.

70.    Ms. Khan continues to experience ongoing harm and distress because men can continue to access and view those photographs.

**Statements and Repeated Instances at Lew Sterrett Evidence a Policy and Custom of Violating Religious Rights**

71.    The statements made by City of Richardson officers demonstrate a policy and custom of removing religious headwear.

72.    On information and belief, there is a pattern of facts showing consistent failure to provide accommodations for religious headwear at Lew Sterrett, evidenced by additional instances of litigation filed against Dallas County.

73.    In January 2024, three women were ordered to remove their hijabs for their booking photos at Lew Sterrett by two different officers, in violation of their religious beliefs and ignoring their requests for accommodations. *See El-Hussain v. Dallas Cnty.*, No. 3:24-CV-0737-B (N.D. Tex.  Oct. 7, 2024).

74.    As alleged in *El-Hussain*, one officer said that the three women were required to remove their head coverings as "part of the process," indicating that hijabs worn for religious reasons were treated in the same way as hats, wigs, and weaves. The officer also stated that it was

the Dallas County Sheriff's Office standard process and procedure to require the removal of any head coverings, and "everyone has to do it." Doc. 10, Am. Compl. ¶¶ 28–29.

75.    DCSD officers required Ms. Khan to remove her head covering for a booking photo in March 2024. *See supra*.

76.    In April 2024, DCSD officers failed to allow Ms. Khan to access the hijab that was part of her belongings after she was picked up from the Richardson jail, and required her to show portions of her hairline and ears when taking a photo. *See supra*.

77.    Most recently, in October 2024, Jana Sweissi, a Muslim woman, was similarly ordered by Dallas County detention officers to remove her hijab against her religious objections as part of the booking process at Lew Sterrett. DCSD officers took her hijab away, placed it in a property bag, and required her to wear a plastic-like hair covering with a cut-out for her face, but her hair continued to be visible from the ill-fitting garment. They did not return Ms. Sweissi's hijab until after she was released. DCSD officers also required her to take a photo without any hair covering.

78.    In all three instances, Dallas County Sheriff Deputies or detention officers stated that the removal of the hijab was required by a Dallas County policy.

79.    Even without this policy in-hand, the repeated instances of litigation in the past year alone—regarding the same issue in the instant case—highlights that Defendant knew or should have known that their practice would infringe on constitutional religious liberties.

**Dallas-Fort Worth's Large Muslim Population and Defendants' Failure to Train**

80.    Religious head coverings are commonplace in several major religions, including Judaism, Sikhism, African spirituality, and as in Ms. Khan's case, Islam.

81.    The Dallas-Fort Worth metroplex is home to one of the largest Muslim populations

in the country. Dallas County had an estimated Muslim population of 150,000 people as of 2016.[4]

82.     Many nationwide Muslim organizations are either based out of or have satellite offices in the Dallas-Fort Worth metroplex as well, not to mention dozens, perhaps hundreds, of mosques and religious schools that serve the large population. The Muslim American Society's Islamic Center of Dallas, the Islamic Circle of North America, and the Islamic Association of North Texas all have centers or offices located in Richardson, Texas.

83.     Muslim American culture is so noticeably represented in the area that in 2016, *Texas Monthly* reported in 2016 that many Muslim Americans refer to Dallas as the "Medina of America" (referring to the second holiest city in Islamic tradition).[5]

84.     The Dallas-Fort Worth metroplex is an area encompassing four counties and dozens of incorporated cities; these cities are mostly directly adjacent to each other and without noticeable borders or separation. People often travel through various cities as they move through DFW for work, errands, recreation, or other tasks in their daily lives. Thus, it is almost certain that a municipality's functions, customs, practices, and policies will impact and affect a substantial Muslim population.

85.     Currently, there is ongoing litigation against Dallas County for its failure to accommodate religious headwear in law enforcement booking procedures. *See supra El-Hussain v. Dallas Cnty.*

86.     Thus, Dallas County and the City of Richardson knew or should have known that their policies mandating the removal of religious headwear, or lack of law enforcement training to

---

[4] Eric Benson, *Faith and Hope*, (Aug. 2016), TEXAS MONTHLY, https://www.texasmonthly.com/the-culture/faith-and-hope-omar-suleiman.
[5] *Id.*

15

accommodate religious headwear, was inevitably going to impact and affect substantial populations of Muslim women in the DFW area who, by their religious convictions, cannot be seen without their hijab or make physical contact with men outside their family.

87.     Nevertheless, Dallas County and City of Richardson failed to train detention officers and other staff at the jail about how to accommodate the religious liberty and beliefs of practicing Muslim women. On information and belief, they failed to adequately train their staff on how religious head coverings differ from other types of non-religious head coverings; how to photograph and search individuals who observe hijab while still respecting their religious liberties; that hijabs can be worn as clothing and should not remain in property bags inaccessible to those detained; and how to allow women access to their hijab while in detention.

**State and National Policies Allowing Hijabs and Religious Head Coverings**

88.     Dallas County and the City of Richardson's policy or practice of mandating the removal of religious headwear runs contrary to the practice of national and state agencies. These agencies recognize the importance of accommodating religious headwear as sincerely held religious beliefs as part of the Constitutional protections of the First Amendment, including when photographing individuals for identification and security purposes.

89.     The U.S. Department of State permits religious head coverings in official passport photos, so long as the applicant "submit[s] a signed statement that says it is religious attire worn daily in public."[6]

90.     U.S. Citizenship and Immigration Services (USCIS) issued a policy memorandum

---

[6] Passport Photos, TRAVEL.STATE.GOV, https://travel.state.gov/content/travel/en/passports/how-apply/photos.html. (last updated Jan 20, 2025) [https://perma.cc/H7TH-LTET].

in 2012 directing employees to permit religious headwear in photographs.[7] The policy states "USCIS will accommodate an individual who wears headwear as part of their religious practices. Religious headwear can be worn if a reasonable likeness can be obtained from an individual, the full face is visible and the religious headwear does not cast a shadow on the face." The policy also provides, on religious grounds, for private rooms for individuals to adjust their religious headwear, and for the person being photographed to request a photographer of the same gender. The policy provides similar accommodations for fingerprinting.

91.    Similarly, at the state level, the Texas Department of Public Safety allows applicants for concealed handgun licenses to wear head coverings in their application photographs when "worn daily for religious purposes" and so long as it does not cover the applicant's face.[8]

92.    Applicants for a Texas driver's license also may wear religious head coverings in their photo so long as their eyes are visible. The REAL ID Act, which delineates specific requirements for compliant driver's licenses across the country, also allows head coverings so long as they do not obscure an applicant's facial features. It does not require exposing the hair line or the ears.[9]

## FIRST CAUSE OF ACTION
### The Religious Land Use and Institutionalized Persons Act (42 U.S.C. § 2000cc)

93.    Plaintiff repeats and realleges the above paragraphs as though they were fully set forth herein.

---

[7] Memorandum from the U.S. Citizenship and Immigration Servs. (July 23, 2012), https://www.uscis.gov/sites/default/files/document/memos/Accommodating%20Religious%20Beliefs%20PM.pdf (current USCIS policy on religious head coverings) [https://perma.cc/B5U7-Q5LA].

[8] 37 TEX. ADMIN. CODE § 6.13.

[9] REAL ID Frequently Asked Questions, https://www.dhs.gov/real-id/real-id-faqs [https://perma.cc/H3EA-FCDA].

94.    The Religious Land Use and Institutionalized Persons Act (hereinafter "RLUIPA") provides, in relevant part, the following: "No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that the imposition of the burden on that person - (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a)(1)-(2).

95.    At all relevant times, Defendants met the definition of the term "government" under RLUIPA. *See* 42 U.S.C. § 2000cc-5(4)(A)(i)-(iii).

96.    At all relevant times, the locations where Richardson Police Department and Dallas County Sheriff detain and photograph arrestees (including, but not limited to, Lew Sterrett Justice Center and Richardson Police Department, where the events detailed above transpired) are federally funded "institutions" as defined under the RLUIPA and the Civil Rights of Institutionalized Persons Act of 1980 ("CRIPA"), 42 U.S.C. § 1997(1)(B)(ii)-(iii).

97.    At all relevant times, Plaintiff was "confined to institutions" as defined under RLUIPA when the events alleged above transpired.

98.    At all relevant times, Defendant institutions received federal financial assistance within the scope of RLUIPA, including, but not limited to, the Department of Justice's Justice Assistance Grant (JAG) and funds under the American Rescue Plan Act.

99.    Defendant City of Richardson's acts or omissions, policies, and customs substantially burdened Plaintiff's religious exercise by requiring her to remove her religious head covering while she was detained and photographing her without her hijab. They also substantially burdened her religious exercise by requiring her to be patted down in front of male officers and by

refusing her request for a female officer to take her booking photo and fingerprints.

100.    Defendant Dallas County substantially burdened Plaintiff's religious exercise by keeping her hijab from her in transportation and when inside the facility; by requiring her to expose her ears and portions of her hair in her photograph in April 2024; by refusing to allow her to be photographed with a head covering in March 2024; by having male officers pat her down; and by restricting her ability to pray.

101.    Defendants' acts or omissions, policies, and customs do not further a compelling government interest.

102.    Defendants' acts or omissions, policies, and customs are not the least restrictive means of furthering a compelling government interest.

103.    As a direct and proximate result of Defendants' unlawful discriminatory conduct, Plaintiff has sustained damages, and has suffered and continues to suffer mental anguish, physical and emotional distress, humiliation, and embarrassment.

**SECOND CAUSE OF ACTION**
**Free Exercise Clause**
**(42 U.S.C. § 1983)**

104.    Plaintiff repeats and realleges the above paragraphs as though they were fully set forth herein.

105.    42 U.S.C. § 1983 prohibits any person acting under color of state law, custom, or usage to deprive a citizen of rights secured by the Constitution.

106.    At all relevant times, Defendants acted under color of state law.

107.    Under the First Amendment of the Constitution of the United States of America, Plaintiff has the right to freely exercise her religion.

108.    By forcing Plaintiff to fully and partially remove her religious head covering for

19

post-arrest photographs and confinement, Defendants deprived Plaintiff of her right to freely exercise her religion in contravention of the First Amendment's Free Exercise Clause as incorporated and applied to the states by way of the Fourteenth Amendment to the Constitution of the United States.

109.    Defendants also deprived Plaintiff of her right to freely exercise her religion by forcing her to submit to pat downs by and in front of male officers, by requiring her to be fingerprinted by male officers, and by restricting her ability to pray.

110.    At all times relevant hereto, Defendants knew or should have known Muslim women often wear hijab as part of their religious practice and sincerely held religious belief.

111.    At all times relevant hereto, Defendants acted pursuant to a policy or custom which denies inmates free exercise of religion by removing detainees' religious head coverings.

112.    The City of Richardson indicated through its officers' statements to Ms. Khan that its policy was to remove head coverings from all individuals, without regard for their religious beliefs. The violation of the rights of Muslim women who wear hijab was an obvious consequence of such a policy and of the failure to train City of Richardson police officers on how to respect the religious beliefs of Muslim women.

113.    Similarly, the City of Richardson had a policy, practice, and custom to pat down all those arrested in common spaces of the detention facility, without allowing any exceptions for private pat downs to accommodate strongly held religious beliefs requiring modesty in front of men, and had a policy, practice, and custom that failed to allow women to request female officers conduct any fingerprinting. This policy, practice, and custom, along with the failure to train officers on how to respect the religious beliefs of Muslim women had the obvious consequence of violating the rights of Muslim women like Ms. Khan.

114.    Upon information and belief, Dallas County had a policy, practice, and custom that required removal of all head coverings without allowing exceptions for religious beliefs. Even if Dallas County modified its policy, practice, and custom after a lawsuit was filed about these practices, it still required women to show their ears, violating their strongly held religious beliefs. Furthermore, their policy, practice, and custom did not allow women to obtain head coverings from their property or access an alternative head covering if they had been taken at the initial arrest, and did not require a female office to conduct any pat downs or searches of women who requested one based on their religious beliefs. Furthermore, Dallas County failed to train its police and detention officers to properly respect the religious head coverings and modesty practices of those in its custody.[10]

115.    Defendant Richardson Police Department's and Defendant Dallas County Sheriff's Department's policies or customs, and/or their failure to adopt clear policies and failure to properly train their deputies, were a direct and proximate cause of the constitutional deprivation suffered by Plaintiff.

116.    Plaintiff has sustained damages, and has suffered and continues to suffer mental anguish, physical and emotional distress, humiliation, and embarrassment.

117.    The existence of Plaintiff's photo in law enforcement databases and the policies of Richardson Police Department and Dallas County Sherriff are likely to continue to harm Plaintiff without equitable relief.

---

[10] This pattern or practice is more thoroughly discussed in Paragraphs 70–78.

**THIRD CAUSE OF ACTION**
**Freedom of Worship**
**(Tex. Const. art I, § 6)**

118.    Plaintiff repeats and realleges the above paragraphs as though they were fully set forth herein.

119.    Texas Constitution Article I, section 6 states, "All men have a natural and indefeasible right to worship Almighty God according to the dictates of their own consciences. . . . No human authority ought, in any case whatever, to control or interfere with the rights of conscience in matters of religion. . . ." TEX. CONST. art. I, § 6.

120.    Defendants' policies that require arrestees who wear religious head coverings to remove those head coverings or uncover portions of their ears and hair to be photographed violate Article I, Section 6, by unduly burdening Plaintiff's religious practice. Specifically, the policies burden Plaintiff's ability to adequately cover herself in the presence of men she is not related to by consanguinity or marriage.

121.    Defendants' policies that remove or prevent arrestees from wearing religious head coverings during their time in transportation and detention violate Article I, Section 6 by unduly burdening Plaintiff's religious practice. Such policies require Plaintiff to be without her commanded religious head coverings in the presence of unknown men.

122.    Defendant Dallas County's policies that prevented Plaintiff from praying violate Article I, Section 6 by unduly burdening Plaintiff's religious practice. Such policies prevented the Plaintiff from touching the ground and bowing throughout her prayer.

123.    As a direct and proximate result of Defendants' unlawful discriminatory conduct, Plaintiff continues to suffer harm and a burden on her religious exercise from the continued

publication of her booking photographs in the databases used by Defendants and is likely to suffer similar future harms without equitable relief.

### FOURTH CAUSE OF ACTION
### Texas Religious Freedom and Restoration Act
### (Tex. Civ. Prac. & Rem. Code § 110.003)

124.    Plaintiff repeats and realleges the above paragraphs as though they were fully set forth herein.

125.    Under the Texas Religious Freedom and Restoration Act, "A government agency may not substantially burden a person's free exercise of religion."

126.    By forcing Plaintiff to remove her religious head coverings for post-arrest photographs, transport, and confinement, Defendants interfered with her right to wear her head covering as her religion mandates. The forced removal of her hijab burdened her free exercise of religion.

127.    By depriving Plaintiff of her hijab during her detention, Defendant Richardson Police Department interfered with her right to cover her body as her religion mandates. The deprivation of her hijab burdened her free exercise of religion.

128.    Defendant Dallas County's policy prevented Plaintiff from praying and interfered with her right to pray as her religion mandates. Such policy prevented Plaintiff from being able to touch the ground and bowing throughout her prayer.

129.    As a direct and proximate result of Defendants' unlawful discriminatory conduct, Plaintiff has sustained damages, and has suffered and continues to suffer mental anguish, physical and emotional distress, humiliation, and embarrassment. Further, Plaintiff continues to suffer a burden on her religious exercise from the continued publication of her booking photographs in the databases utilized by Defendants and is likely to suffer similar harms in the future without

equitable relief.

## FIFTH CAUSE OF ACTION
### Texas Tort Claims Act
### (TEX. CIV. PRAC. & REM. CODE ANN. §§ 101.001 et seq.)

130.   Plaintiff repeats and realleges the above paragraphs as if the same were fully set forth at length herein.

131.   The Texas Tort Claims Act provides, in relevant part: "A governmental unit in the state is liable for . . . personal injury . . . so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." Tex. Civ. Prac. & Rem. Code § 101.021.

132.   At all relevant times, each Defendant acted as a governmental unit.

133.   At all relevant times, each Defendant utilized its own tangible personal property in executing these acts against the Plaintiff.

134.   Thus, each Defendant has waived its sovereign immunity within the meaning of this statute.

135.   By using a camera to take photographs of Plaintiff without her religious head covering, Defendants utilized their tangible personal property to inflict personal injury on Plaintiff through forced violations of her sincerely held religious beliefs and the resulting emotional distress, embarrassment, and shame.

136.   Further, by uploading those photographs to a computer database and maintaining them there, each Defendant has utilized its tangible personal property to cause an enduring personal injury to the Plaintiff through this ongoing violation of her sincerely held religious beliefs and the resulting emotional distress, embarrassment, and shame.

137.   As a direct and proximate result of the Defendants' conduct, Plaintiff has suffered

damages and suffers continuing harm.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court:

a)      Declare that Defendants' discriminatory practices violate the RLUIPA, 42 U.S.C. § 2000cc *et seq*.; the Free Exercise Clause of the First Amendment to the United States Constitution; Article 1, Section 6 of the Texas Constitution; and the Texas Religious Freedom and Restoration Act;

b)      Enjoin Defendants, Defendants' agents, employees, and successors, and all other persons in active concert or participation with Defendants, from requiring the removal of any religious head or hair coverings for the purpose of post-arrest photographs;

c)      Require Defendants to remove, delete, and permanently destroy any photographs from all databases offending Plaintiff's rights to wear her religiously-mandated head covers;

d)      Require Defendants to adopt nondiscriminatory policies and practices to prevent encroachment on the religious rights of arrestees and detainees in the future;

e)      Award such damages to Plaintiff as will fully compensate her emotional distress suffered due to Defendants' unlawful conduct;

f)      A jury trial on all appropriate issues;

g)      Award the Plaintiff's attorneys' fees and costs under 42 U.S.C. § 1988 and state law;

h)      Grant such further relief as the Court deems just, equitable, and proper.

BY: /s/Huma Yasin

Huma T. Yasin, Esq.
TX Bar No. 541-5971
SPANGLER LAW PLLC
400 North Saint Paul St., Ste 750
Dallas, TX 75201
P: 214-932-3030
E: hyasin@spanglerlaw.com

Marwa Elbially, Esq.
ELBIALLY LAW OFFICE, PLLC
704 East 15th Street, Suite 204
Plano, TX 75074
T: 972.423.7330
E: info@elbiallylaw.com
TX Bar No. 2409-0089


Sara Zampierin
State Bar No. 24132896
Sarah Abouelseoud*
Armand Avila*
Elizabeth Kruse*
Ben Whisman*
TEXAS A&M UNIVERSITY CIVIL
RIGHTS CLINIC**
307 W. 7th St,
Fort Worth, TX 76102
T: 817-212-4123
E: sara.zampierin@law.tamu.edu


PLAINTIFF'S ATTORNEYS
* Qualified Law Students under
Tex. Gov't Code § 81.102

** Plaintiff is represented by a
clinic operated by Texas A&M
University School of Law, but this
document does not purport to
present the school's institutional
views, if any.