## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **AFSHEEN KHAN** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | **Civil Action No.  3:25-CV-01169-O** |
| | § | |
| **CITY OF RICHARDSON, ET AL.,** | § | |
| | § | |
| **Defendants.** | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendant City of Richardson's ("Richardson") Motion to Dismiss and Brief in Support (ECF Nos. 7–8); Plaintiff's Response (ECF No. 9); and Richardson's Reply (ECF No. 12); and Defendant Dallas County's ("Dallas") Motion to Dismiss and Brief in Support (ECF No. 13); Plaintiff's Response (ECF No. 15); and Dallas' Reply (ECF No. 20).  The Motions are ripe for the Court's review.  After considering the briefing and the relevant caselaw, the Court determines that Richardson's Motion is **GRANTED in part** and **DENIED in part** and Dallas' Motion is **GRANTED in part** and **DENIED in part**.

## I.    BACKGROUND[1]

This case arises from the arrest of Plaintiff Afsheen Khan. Plaintiff was arrested in late April 2024 by the Richardson Police Department based on an outstanding warrant. She was transported to the Richardson Police Department jail facility. Plaintiff is a devout Muslim who according to the tenets of her faith wears a hijab—a headscarf intended to cover her hair, neck,

---

[1] Unless otherwise cited, the Court's recitation of the facts is taken from Plaintiff's Complaint. *See* Pl.'s Compl., ECF No. 1. At this stage, these facts are taken as true and viewed in the light most favorable to Plaintiff. *See Sonnier v. State Farm Mut. Auto Ins.*, 509 F.3d 673, 675 (5th Cir. 2007).

ears, and body in front of all men who are not related to her by blood or marriage—and prays five times daily.

During the intake process at the Richardson jail, a female police officer instructed Plaintiff to remove her hijab. Plaintiff explained to the officer that she wore the hijab as part of her sincerely held religious beliefs and that her faith required her to continue wearing the hijab while detained. The female officer and several male officers reiterated that Plaintiff would need to remove her hijab. Plaintiff was then escorted to the bathroom by a female officer to change her clothes at which time the officer repeated that Plaintiff would need to remove her hijab, per policy, due to safety and security issues. Plaintiff then requested a supervisor and re-asserted her need to wear a hijab.

Plaintiff then observed the female officer placing a call and listened as the officer explained Plaintiff's request. The female officer was instructed by the person on the phone to provide Plaintiff a blanket as an alternative to her hijab. Plaintiff objected to the blanket stating that it was not a sufficient alternative. The female officer explained that the blanket was the best accommodation she could offer based on policy. With no other option, Plaintiff removed her hijab and changed into an inmate uniform. The officer then instructed Plaintiff to walk from the bathroom to a detention room, which she did without her hijab or the blanket substitute. Plaintiff remained uncovered for nearly an hour with men present before she received the blanket. Once inside the detention room, both male and female officers began questioning Plaintiff. She attempted to use the provided blanket to sufficiently cover herself, but the blanket would not stay in place.

As part of the booking process, Plaintiff was required to have her photograph and fingerprints taken. In order to take Plaintiff's booking photo, the officers instructed Plaintiff to remove the blanket, which she objected to. Plaintiff then requested that a female office take her

booking photo and fingerprints without the male officers present. Plaintiff was then moved to another room to have her booking photo taken where only two officers were present: a female officer and a male officer. Plaintiff objected to having the male officer present and requested that he leave. The officers then instructed Plaintiff to remove the blanket from her head to have her photo taken. Despite Plaintiff's vociferous objections, the female officer took Plaintiff's photograph with her hair, neck, and ears exposed with the male officer still in the room. Plaintiff asserts that her uncovered photo remains accessible in law enforcement databases to both male and female officers causing her ongoing harm and distress.

After her booking photograph was taken, Plaintiff's fingerprints were taken by the male officer. Plaintiff objected to the male officer touching her and asked that the female officer fingerprint her. According to Plaintiff, the male officer dismissed Plaintiff's objection based on the justification that he was already present in the room when her booking photo was taken. Once she was fingerprinted, Plaintiff was taken to a holding cell where she remained for several hours. During this time, she attempted to cover herself with the provided blanket but was unable to properly do so based on the cell's cold temperature and the difficulty of keeping the blanket in place while she attempted to pray.

Plaintiff was then informed that she was being transferred to Dallas County's jail and was instructed to remove the blanket and change into the clothes she was wearing when she arrived at the Richardson jail. Plaintiff was then given a bag containing her clothes, but her hijab was missing. When she requested it be returned the officers said that it was in her personal property bag, which she was not allowed to access while in custody.

When Dallas County Sheriff's Department ("DCSD") officers arrived to transport Plaintiff to Dallas County's jail, Plaintiff asked a male DCSD officer if she could have her hijab returned

before being transported. The officer refused this request. Plaintiff was then moved through public areas of the Richardson Jail and transported to the Dallas County jail by male officers without her head covered. Once at the Dallas jail, a male DCSD officer conducted a pat down on Plaintiff, and a female officer conducted the inmate intake process. Throughout this time Plaintiff made several requests for her hijab that were denied. After undergoing a strip search by a female officer, Plaintiff was given her hijab. Plaintiff then underwent several other booking processes, including a medical exam, fingerprinting and another booking photograph.

During the booking photo, a female officer instructed Plaintiff to remove her hijab so she could be photographed. Plaintiff protested stating that her religious beliefs required her to keep her hair, neck, and ears covered. Plaintiff had been previously arrested and processed by DCSD, and according to Plaintiff, the officer informed Plaintiff that she would look at her prior booking photo to see whether she wore her hijab in that photo. Finding that Plaintiff had not worn a hijab in that photo, the officer instructed Plaintiff to take off her hijab. Plaintiff continued to object and eventually the officer allowed Plaintiff to keep her hijab on but required she pull it back to expose her ears.

Plaintiff was moved to a common area where her arraignment was set to take place. She asked a female officer if she could kneel and pray one of her five daily prayers required by her Islamic faith. To properly pray would require Plaintiff to repeatedly stand, kneel, and prostrate herself and to place her head to the floor. After asking her sergeant if Plaintiff was allowed to do this, the officer informed Plaintiff that she was not allowed to kneel and pray in a public area. Plaintiff was eventually released after spending nearly 24 hours in custody.

Prior to her April arrest, Plaintiff was arrested in March 2024 in Dallas County following a protest. During this arrest Plaintiff's hijab was removed. Upon arrival at the Dallas jail, Plaintiff

asked to keep her hood on during her booking photo to cover her hair. The DCSD officer taking her photo said that she could not keep her hair covered and took her picture with her hair exposed. Plaintiff claims she is suffering ongoing harm because her booking photos continue to be accessible to men who can see her without her head covered.

Plaintiff subsequently filed this lawsuit on May 8, 2025. The City of Richardson and Dallas County individually moved to dismiss Plaintiff's Complaint under Federal Rule of Civil Procedure 12(b)(6). Plaintiff timely responded to each motion, and both Richardson and Dallas similarly replied. The Motions are now ripe for the Court's review.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The Rule "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-68 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). If a plaintiff fails to satisfy this standard, the defendant may file a motion to dismiss for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A claim is facially plausible when the plaintiff pleads factual content that allows the court to reasonably infer that the defendant is liable for the alleged misconduct. *Iqbal*, 556 U.S. at 678. Unlike a "probability requirement," the plausibility standard instead demands "more than a sheer possibility that a defendant has acted unlawfully." *Id*. Where a complaint contains facts that are "'merely consistent

with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

When reviewing a Rule 12(b)(6) motion, the Court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier*, 509 F.3d at 675. However, the Court is not bound to accept legal conclusions as true. *Iqbal*, 556 U.S. at 678–79. To avoid dismissal, pleadings must show specific, well-pleaded facts rather than conclusory allegations. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. A court ruling on a motion to dismiss "may rely on the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Randall D. Wolcott M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (citations and internal quotation marks omitted).

## III.    ANALYSIS

Plaintiff brings five causes of action against both Richardson and Dallas. She alleges that Defendants violated (1) the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc; (2) the Free Exercise Clause of the First Amendment under 42 U.S.C. § 1983; (3) Article 1, Section 6 of the Texas Constitution (Freedom of Worship); (4) the Texas Religious Freedom and Restoration Act ("TRFRA"), TEX CIV. PRAC. & REM. CODE § 110.003; and (5) the Texas Tort Claims Act ("TTCA"), TEX CIV. PRAC. & REM. CODE § 101.001 *et seq*. Under Federal Rule of Civil Procedure 12(b)(6), Richardson moves to dismiss all of Plaintiff's claims, and Dallas moves to dismiss Plaintiff's (1) Section 1983 First Amendment Free-Exercise claim, (2) Texas

Constitution Freedom of Worship claim, and (3) TTCA claim. The Court addresses each claim in turn.

### A. Religious Land Use and Institutionalized Persons Act

Richardson argues that Plaintiff's RLUIPA claim should be dismissed because Plaintiff seeks only monetary damages under her RLUIPA claim and monetary damages are not available under RLUIPA.[2] Plaintiff argues that Fifth Circuit precedent forecloses this argument.[3] Plaintiff is correct.

"RLUIPA provides that 'no government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if that burden results from a rule of general applicability,' unless the burden 'is in furtherance of a compelling government interest' and 'is the least restrictive means of furthering that compelling government interest.'" *Chance v. Tex. Dep't of Criminal Justice*, 730 F.3d 404, 410 (5th Cir. 2013) (quoting 42 U.S.C. § 2000cc-1(a)). An individual can bring suit for a RLUIPA violation to "obtain appropriate relief against a government." *Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 289 (5th Cir. 2012). While "appropriate relief "does not include monetary damages against states, "municipalities and counties may be held liable for money damages under RLUIPA." *Id.* at 290. Because its argument for dismissal is precluded by Fifth Circuit precedent, Richardson's Motion to Dismiss Plaintiff's RLUIPA claim is **DENIED**.

### B. Section 1983

Plaintiff next alleges a violation of the First Amendment's Free Exercise Clause under 42 U.S.C. § 1983. Richardson and Dallas argue that Plaintiff's §1983 claim should be dismissed

---

[2] Richardson's Mot. Dismiss Br. Supp. 3–4, ECF No. 8.
[3] Resp. 5–6, ECF No. 9.

because Plaintiff has not alleged an official policy promulgated by a final policy maker or pleaded a sufficient failure to train claim.[4]

"Section 1983 provides a private cause of action against those who, under color of law, deprive a citizen of the United States of 'any rights, privileges, or immunities secured by the Constitution and laws.'" *Goodman v. Harris Cnty.*, 571 F.3d 388, 394–95 (5th Cir. 2009) (quoting 42 U.S.C. § 1983). Both municipalities and individuals can be held accountable for violating a person's constitutional rights under Section 1983. *See Est. of Bonilla ex rel. Bonilla v. Orange Cnty.*, 982 F.3d 298, 308 (5th Cir. 2020); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). To impose liability on a municipality under Section 1983, a plaintiff must evidence (1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy (or custom)." *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002).

    1.  Official Policy or Custom

An official municipal policy "usually exists in the form of written policy statements, ordinances, or regulations, but it may also arise in the form of a widespread practice that is 'so common and well-settled as to constitute a custom that fairly represents municipal policy.'" *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 847 (5th Cir. 2009) (quoting *Piotrowski v. City of Houston,* 237 F.3d 567, 579 (5th Cir.2001). To proceed beyond the pleading stage, a complaint's "description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts." *Spiller v. City of Tex. City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997).

---

[4] Richardson's Mot. Dismiss Br. Supp. 4–8, ECF No. 8; Dallas' Mot. Dismiss 6–20, ECF No. 13.

Defendants assert that Plaintiff fails to identify any "written policy statements, ordinances, or regulations" for either Richardson or Dallas denying inmates free exercise of religion, and fails to allege a widespread practice sufficient to establish a custom.[5] Plaintiff argues that statements and actions from Richardson and DCSD officers during her arrests, combined with two separate incidents involving DCSD, are sufficient to support an inference that official policies exist or to establish customs for both Richardson and Dallas.[6] The Court agrees with Defendants.

"[P]leadings are sufficient when they make specific factual allegations that allow a court to reasonably infer that a policy or practice exists and that the alleged policy or practice was the moving force behind municipal employees' [actions]." *Balle v. Nueces Cnty., Tex.*, 952 F.3d 552, 559 (5th Cir. 2017). But to plausibly plead a policy or custom exists "a plaintiff must do more than describe the incident that gave rise to [her] injury." *Pena v. City of Rio Grande City*, 879 F.3d 613, 622 (5th Cir. 2018) (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)). Merely because harm resulted from some interaction with a governmental entity does not permit the inference of an official policy for §1983 purposes. *Colle v. Brazos Cnty., Tex.*, 981 F.2d 237, 245 (5th Cir. 1993). To demonstrate a customary policy a plaintiff must plead facts showing "actions that have occurred for so long and with such frequency that the course of conduct demonstrates the governing body's knowledge and acceptance of the disputed conduct." *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 169 (5th Cir. 2010). Simply describing the incident that gave rise to the lawsuit does not plausibly plead a customary policy. *Pena*, 879 F.3d at 622.

Starting with Richardson, Plaintiff alleges that Richardson "indicated through its officers' statements to [Plaintiff] that its policy was to remove head coverings from all individuals, without

---

[5] Richardson's Mot Dismiss Br. Supp. 5–7, ECF No. 8; Dallas' Mot. Dismiss 11–16, ECF No. 13.
[6] Resp. 9–12, ECF No. 9; Resp. 9–14, ECF No. 15.

regard for their religious beliefs."[7] Plaintiff asserts that Richardson officers told her that she "would be required to remove her hijab in accordance with the City of Richardson's policy," "would be required to remove her hijab, per policy, due to safety and security issues," and "that this was the policy in place, that everyone had to do it, and the blanket was the best accommodation they could offer."[8] Plaintiff further contends that Richardson "had a policy, practice, and custom to pat down all those arrested in common spaces of the detention facility, without allowing any exceptions for private pat downs to accommodate strongly held religious beliefs requiring modesty in front of men, and had a policy, practice, and custom that failed to allow women to request female officers conduct any fingerprinting."[9] However, Plaintiff's only allegations against Richardson are related to the incident that gave rise to this lawsuit. Beyond recounting her experience, Plaintiff has not sufficiently pled enough for the Court to infer that a formal policy exists. *Pena*, 879 F.3d at 622. Likewise, based on this singular event, Plaintiff cannot allege that the complained of conduct "occurred for so long and with such frequency" to be a customary policy. *Zarnow*, 614 F.3d at 169. Accordingly, Plaintiff has not sufficiently pled that an official policy or custom exists for Richardson.

Turning to Dallas, Plaintiff alleges that it had a policy or custom that "required removal of all head coverings without allowing exceptions for religious beliefs," "did not allow women to obtain head coverings from their property or access an alternative head covering if they had been taken at the initial arrest," and "did not require a female office to conduct any pat downs or searches of women who requested one based on their religious beliefs."[10] In support of these allegations Plaintiff cites to two other incidents, one of which involved her, where Muslim women raised

---

[7] Compl. 20, ECF No. 1.
[8] *Id.* at 5–6.
[9] *Id.* at 20.
[10] *Id.* at 21.

similar allegations against DCSD.[11] But in her Response, Plaintiff admits that she and the "other Muslim women did not have identical experiences in the jail[.] [T]he [only] unifying features were the disregard for their religious claims to their head coverings, especially for booking photos."[12] Thus, the only aspect of these encounters sufficiently uniform to be a policy or custom is the disregard for Muslim women's head coverings. *See Gates v. Tex. Dep't of Protective & Regulatory Services*, 537 F.3d 404, 437 (5th Cir. 2008) ("[I]solated violations are not the persistent, often repeated constant violations that constitute custom and policy as required for municipal section 1983 liability.").

In support of her allegation that Dallas has a policy or custom which disregards Muslim women's head coverings, Plaintiff identifies two additional federal court lawsuits describing two incidents involving a total of four Muslim women that occurred between January and October 2024: (1) *El-Hussain v. Dallas County*, No. 3:24-CV-0737-B, 2024 WL 4446997 (N.D. Tex. Oct. 7, 2024) and (2) *Sweissi v. Dallas County*, No. 3:25-CV-1366-X (N.D. Tex. May 31, 2025).[13] In these cases, DCSD allegedly required the women to remove their hijabs for booking photos.[14] Coupled with her two experiences with DCSD, Plaintiff contends that a total of four incidents involving five separate individuals is enough for the Court to infer a policy or custom.[15] The Court disagrees.

To start, the court in *El-Hussain* found that the three plaintiffs there had not sufficiently alleged a policy or custom to survive a motion to dismiss. *See El-Hussain*, 2024 WL 4446997 at *3. While this opinion is not binding on the Court, it is enlightening. Next, the arrest described in

---

[11] *See id.* at 12–13.
[12] Resp. 10-11, ECF 15.
[13] Compl. 12–14, ECF No. 1.
[14] *Id.*
[15] Resp. 10–14, ECF No. 15.

*Sweissi* occurred in October 2024—after both of Plaintiff's arrests.[16] And to sufficiently plead a "pattern requires similarity, specificity, and sufficiently numerous **prior** incidents." *Davidson v. City of Stafford, Tex.*, 848 F.3d 384, 396 (5th Cir. 2017), as revised (Mar. 31, 2017) (emphasis added). Thus, using an incident that occurred after Plaintiff's arrests is irrelevant. But even setting aside both of those issues, as Dallas points out, in both her March arrest and her April arrest DCSD did not force Plaintiff to remove her hijab because she did not enter the Dallas jail with a hijab on. Plaintiff pleads that during her March arrest her hijab was taken during her arrest. And in her April arrest, her hijab was removed by Richardson. While Plaintiff does plead that an officer ordered Plaintiff to remove her hijab for her April arrest booking photo, it appears the officer relented and required Plaintiff to expose her ears not remove her hijab. Although Plaintiff alleges that DCSD forced the other women to remove their hijabs, this was not Plaintiff's experience. Because Plaintiff's experiences varied not only between her arrests but also between the arrests described in *El-Hussain* and *Sweissi,* the Court cannot conclude that an undiscovered written policy exists.

Likewise, DCSD's alleged prior acts are not "fairly similar to what ultimately transpired" nor are four incidents with varying factual resumes over ten months so "common and well settled as to constitute a custom that fairly represents municipal policy." *Hicks-Fields v. Harris Cnty., Tex.*, 860 F.3d 803, 810 (5th Cir. 2017); *see also Davidson*, 848 F.3d at 396–97 (collecting cases where the Fifth Circuit found that as many as two to twenty-seven complaints of similar incidents was "insufficient to establish a pattern."). As the Fifth Circuit explains, proving "a pattern [of practices so persistent and widespread as to practically have the force of law] is a heavy burden,

---

[16] *See* Compl. ¶77, ECF No. 1; Dallas' Mot. Dismiss 15 n.9, ECF No. 13; *see also Sweissi v. Dallas County*, 3:25-cv-01366-X.

one that has rarely been met in [the] caselaw." *Shepherd v. Dallas Cnty.*, 591 F.3d 445, 452 (5th Cir. 2009); *Bonilla*, 982 F.3d at 309; *Sanchez v. Young Cnty.*, 956 F.3d 785, 793 (5th Cir. 2020).

    2.  <u>Policymaker</u>

Even if there were policies in Richardson or Dallas, Plaintiff's §1983 claim still fails because 1) she does not allege that a policymaker promulgated the policy, and 2) she fails to adequately plead that the policymaker knew of any custom.

Plaintiff is correct that she need not establish the identity of the policymaker.[17] *See Groden v. City of Dallas, Tex.*, 826 F.3d 280, 284 (5th Cir. 2016). Rather, she "need only allege facts that show an official policy, promulgated or ratified by the policymaker, under which the municipality is said to be liable." *Pena*, 879 F.3d at 623. A policymaker is "one who takes the place of the governing body in a designated area of city administration." *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) *on reh'g*, 739 F.2d 993 (5th Cir. 1984). He or she must "decide the goals for a particular city function and devise the means of achieving those goals." *Webb v. Town of Saint Joseph*, 925 F.3d 209, 217 (5th Cir. 2019). As the Parties seemingly agree, in Richardson the Chief of Police is the policymaker for police procedures and in Dallas the Sheriff is the policymaker for jail policy.[18] *See Zarnow*, 614 F.3d at 168 (finding Wichita Falls police chief is policymaker); *see also Turner v. Upton County*, 915 F.2d 133, 136 (5th Cir. 1990) (finding that county Sheriff is policymaker).

Plaintiff argues that merely because multiple officers made references to a policy the Richardson Police Chief must have promulgated the policy.[19] But as Richardson correctly points out, Plaintiff has not pled any facts to support that the Richardson Police Chief promulgated a

---

[17] Resp. 12, ECF No. 9.
[18] Richardson's Mot. Dismiss Br. Supp. 7, ECF No. 8; Resp. 11–12, ECF No. 9; Dallas' Mot. Dismiss 7, ECF No. 13; Resp. 11, ECF No. 15.
[19] Resp. 11, ECF No. 9.

written policy or knew about a custom.[20] For a municipality to be liable for an unwritten custom Plaintiff must show "actual or constructive knowledge of such custom" is attributable to the policymaker. *Pena*, 879 F.3d at 623.

Turning to Dallas, Plaintiff argues that she has pleaded enough facts for the Court to infer that Dallas' Sheriff promulgated a policy or had actual or constructive knowledge about a custom.[21] Dallas disputes this, arguing that Plaintiff "pleads no facts whatsoever to allow the Court to draw a reasonable inference" that a policy or custom was promulgated by the Sheriff.[22]

Both Plaintiff and Dallas cite to *Groden v. City of Dallas* to support their respective positions regarding whether a policy was promulgated. 826 F.3d 280, 286 (5th Cir. 2016). In *Groden* the plaintiff carried his burden by alleging that the city "publicly announced" the policy and that its "spokesman" gave "media interviews describing the new policy." *Groden*, 826 F.3d at 286; *see also Pena*, 879 F.3d at 623 (explaining why the plaintiff in *Groden* carried his burden). Dallas argues that unlike *Groden* Plaintiff points to no public announcements or other indicators to support that the Sherriff promulgated a policy.[23] Plaintiff responds that *Groden* is inapplicable here because these types of jail policies would not be publicly announced, rather the Court should infer promulgation based on the DCSD officer's statements.[24] Regardless of whether Plaintiff is right about how jail policies are promulgated, the facts before the Court are dissimilar to *Groden*. Here, Plaintiff has not pleaded any facts to support that a policymaker promulgated any policy. Thus, the Court cannot infer that the Sheriff promulgated an official policy. The Court next evaluates whether there was knowledge of a customary policy.

---

[20] Richardson Mot. Dismiss Br. Supp. 6–7, ECF No. 8; Richardson's Reply 2–3, ECF No. 12.
[21] Resp. 11–12, ECF No. 15.
[22] Dallas' Mot. Dismiss 9, ECF No. 13.
[23] *Id.*
[24] Resp. 11–12, ECF No. 15.

Plaintiff argues that Dallas' policymaker had actual or constructive knowledge about a custom based on the filing of the *El-Hussain* lawsuit mentioned above prior to Plaintiff's April arrest.[25] But Plaintiff does not plead in her Complaint that Dallas had actual or constructive knowledge. "Actual knowledge may be shown by such means as discussions at council meetings or receipt of written information," which Plaintiff does not allege. *Pineda v. City of Houston*, 291 F.3d 325, 330 (5th Cir. 2002) (quoting *Bennett v. City of Slidell*, 728 F.2d 762, 768 (5th Cir. 1984)). "Constructive knowledge may be attributed to the governing body on the ground that it would have known of the violations if it had properly exercised its responsibilities, as, for example, where the violations were so persistent and widespread that they were the subject of prolonged public discussion or of a high degree of publicity." *Id.* While, the Plaintiff cites to several news articles from lesser-known publications, one lawsuit and a few news articles does not rise to the level of "prolonged public discussion" or "a high degree of publicity." *See id.* Rather this case is more akin to *Pena*, where the plaintiff failed to allege that a policy was promulgated or ratified by a policymaker because her "complaint invite[d] no more than speculation that any particular policymaker . . . knew about the alleged custom." *Pena*, 879 F.3d at 623. The same is true here.

Because Plaintiff has not sufficiently pleaded a policy or custom that was promulgated or ratified by a policymaker, the Court need not reach the third element, whether a constitutional violation whose 'moving force' is that policy (or custom)." *Pineda*, 291 F.3d at 328.

    3.  <u>Failure to Train</u>

Plaintiff next claims that Richardson and Dallas failed to properly train their officers to accommodate religious head coverings.

---

[25] *Id.* at 12.

- 15 -

"Municipal liability for failure to train may be proper where it can be shown that policymakers were aware of, and acquiesced in, a pattern of constitutional violations." *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 407 (1997) (cleaned up). "To prevail on a failure to train theory a plaintiff must demonstrate: (1) that the municipality's training procedures were inadequate, (2) that the municipality was deliberately indifferent in adopting its training policy, and (3) that the inadequate training policy directly caused the violations in question." *Zarnow*, 614 F.3d at 170.

For "liability to attach based on an inadequate training claim, a plaintiff must allege with specificity how a particular training program is defective." *Id.* (citation omitted). To plead deliberate indifference a plaintiff must allege a pattern of constitutional violations or a single incident in which "the risk of constitutional violations was or should have been an obvious or highly predictable consequence of the alleged training inadequacy." *Littell v. Houston Indep. Sch. Dist.*, 894 F.3d 616, 624 (5th Cir. 2018). To allege a pattern of constitutional violations, a plaintiff must plead that the violations happen "so often" that "the need for further training must have been plainly obvious to the . . . policymakers." *Littell v. Houston Indep. Sch. Dist.*, 894 F.3d 616, 624 (5th Cir. 2018) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989) (omission in original). The Fifth Circuit has "been wary of finding municipal liability on the basis of [the single incident] exception for a failure to train claim. *Pineda v. City of Houston*, 291 F.3d 325, 334–35 (5th Cir. 2002). Thus, the single incident exception "is generally reserved for those cases in which the government actor was provided no training whatsoever." *Pena*, 879 F.3d at 624. As the Supreme Court has explained, even "adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable." *Canton*, 489 U.S. at 391.

- 16 -

Starting with Richardson, other than recounting the events that happened to her, Plaintiff fails to allege facts to support that Richardson's training program was inadequate or defective. The Fifth Circuit has "rejected attempts by plaintiffs to present evidence of isolated violations and ascribe those violations to a failure to train." *Zarnow*, 614 F.3d at 170. So too does this Court. Further, Plaintiff has failed to sufficiently allege deliberate indifference. Plaintiff does not plead a pattern of constitutional violations but instead only describes her own isolated incident. Likewise, Plaintiff does not plead that Richardson's detention officers received no training. Rather, Plaintiff pleads that Richardson failed to adequately train its officers. Thus, the single incident exception does not apply.

As with Richardson, Plaintiff fails to allege with specificity how Dallas' training program was inadequate. *Zarnow*, 614 F.3d at 170. Plaintiff conclusively claims that "Dallas County failed to train its police and detention officers to properly respect the religious head coverings and modesty practices of those in its custody."[26] But Plaintiff does not plead any facts regarding Dallas' training or supervisory policies that permit the Court to plausibly conclude Dallas' training was inadequate.

Plaintiff also fails to adequately plead deliberate indifference. To start, Plaintiff's Compliant is insufficient to establish a pattern of constitutional violations. As the Court explained above, Plaintiff's experiences at the Dallas jail were not only different from each other but they were different from the facts in *El-Hussain* and *Sweissi*. And to prove a pattern of constitutional violations requires alleging "only very similar violations." *Jason v. Tanner*, 938 F.3d 191, 198 (5th Cir. 2019). Further, four incidents, two of which involved Plaintiff, concerning five individuals,

---

[26] Compl. 21, ECF No. 1.

over ten months is not "so often" that "the need for further training must have been plainly obvious." *Littell*, 894 F.3d at 624.

Finally, Plaintiff has not sufficiently alleged a single incident exception. Merely alleging that Dallas "failed to train detention officers and other staff at the jail about how to accommodate the religious liberty and beliefs of practicing Muslim women"[27] is a conclusory allegation insufficient to survive a motion to dismiss. *Pena*, 879 F.3d at 622. Additionally, Plaintiff does not allege that Dallas jail personnel received no training on how to handle arrestees' religious head coverings. She simply alleges Dallas' training was inadequate. Thus, Plaintiff cannot show that Dallas was deliberately indifferent.

Because Plaintiff fails to plausibly allege a § 1983 claim against Richardson or Dallas, the Court **GRANTS** Richardson and Dallas' Motions to Dismiss as to this claim and **DISMISSES with prejudice** Plaintiff's § 1983 claim.

### C. Article 1, Section 6 of the Texas Constitution (Freedom of Worship)

Richardson and Dallas assert that Plaintiff's claims arising under Article I, § 6 of the Texas Constitution should be dismissed to the extent that they seek money damages.[28] Plaintiff does not dispute that the Texas Constitution does not provide a private cause of action to recover monetary damages for a violation of rights under the Texas Constitution.[29] Instead, Plaintiff avers that she is only seeking equitable relief, which is permitted.[30] *Reynolds v. City of Commerce, Tex.*, 853 Fed. App'x 978, 980 (5th Cir. 2021).

---

[27] *Id.* at 16.
[28] Richardson's Mot. Dismiss Br. Supp. 4, ECF No. 8; Dallas' Mot. Dismiss 20–21, ECF No. 13.
[29] Resp. 7, ECF No. 9.
[30] *Id.* at 6–7; Resp. 19, ECF No.15.

Richardson further argues that Plaintiff's claim under the Texas Constitution should be dismissed based on sovereign or governmental immunity.[31] But as Plaintiff points out, equitable remedies for violations of constitutional rights are not prohibited based on sovereign or governmental immunity.[32] *City of Beaumont v. Bouillion*, 896 S.W.2d 143, 149 (Tex. 1995).

Thus, because Plaintiff seeks only equitable relief, Richardson's and Dallas' Motions to Dismiss are **DENIED** with respect to Plaintiff's claim under Article I, § 6 of the Texas Constitution.

### D. Texas Religious Freedom and Restoration Act

Richardson argues that Plaintiff's TRFRA claim should be dismissed because Plaintiff failed to satisfy TRFRA's notice requirement to waive governmental immunity.[33] Plaintiff asserts that she did satisfy TRFRA's pre-suit notice requirements when she had a Demand for Preservation of Evidence and Notice of Claim ("Preservation and Notice Letter")[34] served via personal service on August 22, 2024.[35] The Court agrees with Richardson.

"Sovereign and governmental immunity are common-law concepts that generally protect the State and its political subdivisions from the burdens of litigation." *Hughes v. Tom Green Cnty.*, 573 S.W.3d 212, 218 (Tex. 2019). While sovereign immunity "typically refers to the protection afforded the State and its various agencies," "the term is also used more broadly to refer to the immunity enjoyed by any state or government actor." *Id.* According to the Texas Legislature, "sovereign immunity to suit and from liability is waived and abolished" for TRFRA claims if a

---

[31] Richardson's Mot Dismiss Br. Supp. 4, ECF No. 8.
[32] Resp. 6–7, ECF No. 9.
[33] Richardson's Mot. Dismiss Br. Supp. 8–9, ECF No. 8.
[34] *See* Ex. A, ECF No. 9-1.
[35] Resp. 15, ECF No. 9.

Plaintiff complies with § 110.006 of the Texas Civil Practice and Remedies Code. Section 110.006 provides:

> (a) A person may not bring an action to assert a claim under this chapter unless, 60 days before bringing the action, the person gives written notice to the government agency by certified mail, return receipt requested:
>  (1) that the person's free exercise of religion is substantially burdened by an exercise of the government agency's governmental authority;
>  (2) of the particular act or refusal to act that is burdened; and
>  (3) of the manner in which the exercise of governmental authority burdens the act or refusal to act.

TEX. CIV. PRAC. & REM. CODE § 110.006. Thus, as the Fifth Circuit explains, "section 110.006 of the TRFRA requires pre-suit notice in the form of certified mail, return receipt requested, 60 days prior to filing suit." *Morgan v. Plano Indep. Sch. Dist.*, 724 F.3d 579, 588 (5th Cir. 2013). The Circuit has also "held that TRFRA's notice requirement is jurisdictional under Texas law, and thus the waiver of governmental immunity is conditioned on plaintiffs' strict compliance with the notice provision." *Gonzales v. Mathis Indep. Sch. Dist.*, 978 F.3d 291, 295 (5th Cir. 2020) (citation modified).

Plaintiff argues that the Texas Supreme Court has since rejected the rationale regarding strict adherence to the certified mail requirement referenced in *Morgan*.[36] *See Hensley v. State Comm'n on Jud. Conduct*, 692 S.W.3d 184, 199 n.71 (Tex. 2024). However, the Texas Supreme Court has not officially held this, it has merely "indicated that TRFRA's presuit notice requirement is not jurisdictional." *Id.* at 199. This Court is bound to follow binding Fifth Circuit precedent which says that the presuit notice is jurisdictional. And the "failure of a jurisdictional requirement deprives the court of the power to act (other than to determine that it has no jurisdiction), and ever

---

[36] Resp. 14, ECF No. 9.

to have acted, as a matter of law." *Morgan*, 724 F.3d at 584 (quoting *City of DeSoto v. White*, 288 S.W.3d 389, 393 (Tex.2009)).

Turning to Plaintiff's Preservation and Notice Letter, it is deficient in several ways. First, it is undisputed that Plaintiff did not send the letter via certified mail, return receipt requested.[37] This alone causes Plaintiff's claim to fail because Richardson's governmental immunity is not waived. Next, Plaintiff's letter did not mention that she was giving notice or seeking redress for a claim under TRFRA. In fact, she never mentions TRFRA or its corresponding code sections. She mentions potential claims for First, Eight, and Fourteenth Amendment violations under the US Constitution, the RLUIPA, the Texas Constitution, the Texas Religious Land Use Act, and the Texas Tort Claims Act, but she does not mention TRFRA. Finally, Plaintiff's letter does not explicitly provide notice that Plaintiff's "free exercise of religion is substantially burdened." Accordingly, Richardson's Motion to Dismiss is **GRANTED**, and Plaintiff's TRFRA claim is **DISMISSED without prejudice**.

### E. Texas Tort Claims Act

The Texas Tort Claims Act provides a limited waiver of sovereign immunity for certain suits against governmental entities and caps recoverable damages. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655 (Tex. 2008). However, "[t]his waiver of immunity does not extend to claims arising out of intentional torts." *Tipps v. McCraw*, 945 F. Supp. 2d 761, 765 (W.D. Tex. 2013) (citing TEX. CIV. PRAC. & REM. CODE § 101.057) (excluding waiver for a claim "arising out of assault, battery, false imprisonment, or any other intentional tort"). To state a claim under the TTCA, Plaintiff must prove that a "governmental unit in the state is liable for . . . personal injury . . . so caused by a condition or use of tangible personal or real property if the governmental

---

[37] *Id.* at 15.

unit would, were it a private person, be liable to the claimant according to Texas law." TEX. CIV. PRAC. & REM. CODE § 101.021.

Richardson and Dallas contend that Plaintiff's TTCA should be dismissed because Plaintiff's allegations involve intentional actions.[38] Plaintiff does not dispute that the TTCA does not permit liability for intentional torts.[39] Instead, Plaintiff asserts that her TTCA claim is founded on a claim for negligence based on the special duties jailers owe to individuals in their custody.[40]

To start, Plaintiff's Complaint does not plead that a special relationship existed or that Defendants acted negligently. Rather, Plaintiff alleges that "[b]y using a camera to take photographs of Plaintiff without her religious head covering, Defendants utilized their tangible personal property to inflict personal injury on Plaintiff," and "by uploading those photographs to a computer database and maintaining them there, each Defendant has utilized its tangible personal property to cause an enduring personal injury to the Plaintiff."[41] As pleaded, Plaintiff has alleged an intentional tort, which is barred under the TTCA. *See Tex. Dep't of Criminal Justice-Cmty. Justice Assistance Div. v. Campos*, 384 S.W.3d 810, 814 (Tex. 2012) ("The property was only used with intent to accomplish the [activity] of which the Plaintiffs complain. Thus, the property's use is encompassed within the exclusion of claims arising from intentional torts.").

Plaintiff argues in her Response that her claim is based on negligence because "a special relationship may sometimes give rise to a duty to aid or protect others."[42] *Pagayon v. Exxon Mobil Corp.*, 536 S.W.3d 499, 504 (Tex. 2017). While a special relationship duty may arise in certain situations, it generally arises only to prevent physical harm to those entrusted into the care of

---

[38] Richardson's Mot. Dismiss Br. Supp. 9–10, ECF No. 8; Dallas' Mot. Dismiss 21–25, ECF No. 13.
[39] Resp. 16, ECF No. 9; Resp. 19, ECF No. 15.
[40] Resp. 16, ECF No. 9; Resp. 19–20, ECF No. 15.
[41] Compl. 24, ECF No. 1.
[42] Resp. 16, ECF No. 9; Resp. 19–20, ECF No. 15.

another. *Salazar v. Collins*, 255 S.W.3d 191, 200 (Tex. App.—Waco 2008, no pet.). The cases Plaintiff cites, many of which do not involve application of the TTCA, highlight that a special duty generally arises when protecting inmates from physical harm that is reasonably foreseeable—attacks from other inmates, suicide, sexual assault—or from negligently failing to render medical care. *See e.g.*, *Salazar*, 255 S.W.3d at 194 (inmate attacked by fellow inmate with a weapon); *Castro v. GEO Grp., Inc.*, No. DR-20-CV-033-AM-VRG, 2021 WL 7707811, at *8 (W.D. Tex. Mar. 15, 2021) (inmate committed suicide); *Cuevas v. Westerman*, No. 1:14-CV-0133, 2016 WL 11529760 (S.D. Tex. Nov. 10, 2016) (inmate sexually assaulted); *Garcia-Higgins v. LCS Corr. Servs.*, No. 2:12-CV-0121, 2013 WL 435911 (S.D. Tex. Feb. 4, 2013) (failure to render medical care).

Here, Plaintiff has not alleged any physical harm commensurate with the types of harm mentioned above which would implicate a special relationship duty giving rise to a negligence claim. Likewise, "Texas law does not allow a plaintiff to avoid the bar of governmental immunity by describing essentially intentional conduct as an act of negligence." *Lopez-Rodriguez v. City of Levelland, Tex.*, 100 Fed. App'x 272, 275 (5th Cir. 2004). Thus, because Plaintiff has alleged an intentional tort which is barred by sovereign immunity under the TTCA, Richardson and Dallas' Motion to Dismiss is **GRANTED** with respect to Plaintiff's TTCA claim. Plaintiff's TTCA claim is **DISMISSED with prejudice**.

### F.  Leave to Amend

If a plaintiff's pleadings are deficient under Rule 12(b)(6), a district court should "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Rule 15(a) even "evinces a bias in favor of granting leave to amend." *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 566 (5th Cir. 2002). But "leave to amend under Rule 15 is by no means automatic."

*Goldstein v. MCI WorldCom*, 340 F.3d 238, 254 (5th Cir. 2003). One of the permissible reasons for denying a request for leave to amend is if the amendment would be futile. *Id.* Similarly, "a plaintiff is not entitled to "an opportunity to satisfy the heightened pleading requirements" of municipal liability cases when he simply "declares the adequacy of his complaint" in "response to the motion to dismiss." *Spiller v. City of Texas City, Police Dep't.*, 130 F.3d 162, 167 (5th Cir. 1997) (quoting *Jacquez v. Procunier*, 801 F.2d 789, 792–93 (5th Cir. 1986); *see also Babb v. Dorman*, 33 F.3d 472, 479 (5th Cir. 1994).

Here, justice does not require leave to amend. Plaintiff's responses did no more than declare the sufficiency of her pleadings. Likewise, Plaintiff does not suggest the particular grounds on which amendment is sought. Fed. R. Civ. P. 7(b)(1)(B). Granting leave to amend "would do nothing but prolong the inevitable." *Spiller*, 130 F.3d at 167. Accordingly, the Court **DENIES** leave to amend.

## IV.    CONCLUSION

For the forgoing reasons, Richardson's Motion to Dismiss is **GRANTED in part** and **DENIED in part** and Dallas' Motion to Dismiss is **GRANTED in part** and **DENIED in part**. Richardson's Motion to Dismiss Plaintiff's RLUIPA claim is **DENIED**. Richardson's and Dallas' Motions to Dismiss are **DENIED** with respect to Plaintiff's claim under Article I, § 6 of the Texas Constitution. Plaintiff's § 1983 claims are **DISMISSED with prejudice** as to both Richardson and Dallas. The Court **DISMISSES without prejudice** Plaintiff's TRFRA claim against Richardson. Finally, Plaintiff's TTCA claims against Richardson and Dallas are **DISMISSED with prejudice**.

**SO ORDERED** this **4th day** of **March, 2026**.

Reed O'Connor
**CHIEF UNITED STATES DISTRICT JUDGE**